United States District Court
District of Massachusetts

```
_____
                                  )
Covidien LP and Covidien Holding  )
Inc.                              )
                                  )
          Plaintiffs,             )
                                  )
          v.                      )          Civil Action No.
                                  )          16-12410-NMG
Brady Esch                        )
                                  )
          Defendant.              )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

This dispute arises out of alleged breaches of an employment agreement and a separation agreement between Covidien LP and Covidien Holding Inc. ("plaintiffs" or "Covidien"), on the one hand, and Brady Esch ("defendant"), Covidien's former employee, on the other. Plaintiffs allege defendant breached those agreements by 1) assigning rights to three patents to his new company rather than to Covidien and 2) disclosing plaintiffs' confidential information in the patent applications.

Pending before this Court is plaintiffs' motion for a preliminary injunction. For the following reasons, plaintiff's motion will be allowed.

I.  **Background**

Covidien is global healthcare company and a manufacturer of medical devices and supplies. At issue in this case are

Covidien's Endovenous ("EV") products, which are used to treat superficial venous disease, commonly known as varicose veins.

### A.    The NNC Agreement

Brady Esch began working for Covidien in 2009 when Covidien acquired VNUS Technologies, Esch's employer at the time.  In or about December, 2009, Esch entered into a "Non-Competition, Non-Solicitation, and Confidentiality Agreement" ("NNC Agreement") with Covidien.

The NNC Agreement provides that Esch must disclose to Covidien all "inventions" (defined broadly in the NNC Agreement) created during his employment with Covidien or within one year after leaving the company:

> You shall promptly disclose to the Company all Inventions (as defined in Subsection II.B), which are made or conceived by you, either alone or with others, during the term of your employment with the Company, whether or not during working hours. . . . In addition, in order to avoid any dispute as to the date on which Inventions were made or conceived by you, they shall be deemed to have been made or conceived during your employment with the Company if you take affirmative steps to have them reduced to practice either during the term of your employment or within one year after separation from employment.

The NNC Agreement further states that Esch "hereby assign[s]" all interest in such inventions to Covidien and that Esch will not disclose any of Covidien's confidential information.

**B.    The Separation Agreement**

In or about November, 2013, Esch was terminated from Covidien.  At that time, he was the Director of Global Marketing for the VNUS business.  As part of his termination, Esch signed a "Separation of Employment Agreement and General Release" ("Separation Agreement").

The Separation Agreement provides in pertinent part, that:

> any provisions of [the NNC Agreement] concerning the
> disclosure or ownership of inventions, methods,
> processes or improvements shall continue in full force
> and effect and shall not be superseded by any
> provision of [the Separation Agreement].

The Separation Agreement also states that Esch shall abide by all previous agreements with respect to "non-disclosure of confidential information."

**C.   Esch's Patent Applications**

Soon after Esch was terminated from Covidien, he formed his own company called Venclose, Inc.  In March, 2014, Esch filed a provisional patent application 61/970,498 ("'498 application").  Along with that patent application, Esch filed a document with the United States Patent and Trademark Office ("USPTO") purportedly assigning all rights to the '498 application to Venclose, Inc.

A year later in March, 2015, Esch and Darius Pryzgoda filed the patent application 14/670,339 ("'338 application"), claiming priority to the '498 application.  Esch listed himself,

Pryzgoda, Rory Christian and Cody Schlinder as inventors in the application.  As with the '498 application, Esch assigned his rights to the '338 application to Venclose.

Also in or about March, 2015, Esch filed a Patent Cooperation Treaty application, PCT/US2015/022849 ("PCT application") with the USPTO as a receiving office for the World Intellectual Property Organization.  Venclose was listed as the applicant and Esch and Pryzgoda were listed as the inventors.

All three patent applications are directed toward a three-wire catheter system.

### D.   Procedural History

In November, 2016, Covidien filed a five-count complaint in this Court.  In December, 2016, shortly after United States District Judge George A. O'Toole, Jr. recused himself from the action, Covidien filed a motion for a preliminary injunction. This session held a hearing on that motion on January 6, 2016.

Plaintiff's motion is the subject of this memorandum.

## II. <u>Plaintiffs' Motion for a Preliminary Injunction</u>

### A.   Personal Jurisdiction

As a threshold matter, defendant avers that this Court lacks personal jurisdiction over him.  Although defendant indicates that he plans to file a motion to dismiss for at least, in part, lack of personal jurisdiction and the Court hesitates to address the merits of a hypothetical question, this

Court must have personal jurisdiction over the defendant in order to enter the requested injunction. United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1084 (1st Cir. 1992). Accordingly, the Court will address defendant's jurisdictional argument in the context of plaintiffs' motion for a preliminary injunction.

Defendant contends without citation, that there is no personal jurisdiction in this case because 1) plaintiffs' claim of personal jurisdiction is based on the forum selection and jurisdictional clauses in the two subject agreements and 2) those agreements are void under California law.

In the NNC Agreement, however, defendant consented to personal jurisdiction in federal courts in Massachusetts. That clause is not subject to any purported policy that California might have with respect to non-compete agreements. Optos, Inc. v. Topcon Med. Sys., Inc., 777 F. Supp. 2d 217, 230 (D. Mass. 2011). Moreover, plaintiffs base their claim for a preliminary injunction on the confidentiality and patent assignment clauses not the non-compete provisions. See id. at 229-30 ("[T]he non-solicitation and non-disclosure clauses in the Agreement fall squarely within California's trade secret exception.").

Defendant also submits that § 4.d of Separation Agreement provides that the forum selection and jurisdictional clauses in the NNC Agreement do not carry over. That argument is

unavailing, however, because § 4.d applies to non-solicitation, non-competition, confidentiality and reasonableness, but not to forum selection or jurisdiction.

Accordingly, because defendant has consented to jurisdiction in this Court, the Court concludes that it has personal jurisdiction over defendant.

### B.   Merits of the Preliminary Injunction

#### 1.   Legal Standard

To obtain a preliminary injunction, the moving party must establish 1) a reasonable likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is withheld, 3) a favorable balance of hardships and 4) the effect on the public interest. Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007).  Out of these factors, the likelihood of success on the merits "normally weighs heaviest in the decisional scales." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." Rohm & Haas Elec. Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114 n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350 n.1 (1976)).  The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for a preliminary injunction. See Asseo v. Pan Am. Grain Co., Inc.,

805 F.2d 23, 26 (1st Cir. 1986).  Ultimately, the issuance of preliminary injunctive relief is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

### 2.   Application

Plaintiffs' complaint alleges five different counts. Plaintiffs seek preliminary injunctive relief, however, based only on 1) plaintiffs' claim for a declaratory judgment that Covidien is the owner of the rights to the three patent applications at issue (Count I) and 2) defendant's alleged breaches of the NNC Agreement and Separation Agreement (Counts IV and V).

Because plaintiffs' argument with respect to the declaratory judgment action is underdeveloped, the Court will address only the alleged breaches of contract.

### a.   Likelihood of success on the merits

Plaintiffs aver that defendant has breached the NNC Agreement and the Separation Agreement by disclosing Covidien's confidential information in the three patent applications. Defendant responds that:  1) the assignment provision in the NNC Agreement is unenforceable under California law, 2) the assignment provision is overbroad under Massachusetts law, 3)

the statute of limitations has run and 4) patent law presumes that Esch, as a named inventor, is the true inventor of the wire catheter system.

With respect to defendant's first argument, he assumes, without explanation, that California law applies to the NNC Agreement.  Even if that were so, defendant focuses exclusively on the assignment provision of the NNC Agreement without addressing the non-disclosure provisions which also form a basis for the issuance of an injunction.  Non-disclosure clauses are valid and severable from other provisions in a contract under California law. Optos, 777 F. Supp. 2d at 232-33.  Because the NNC Agreement contains a severability clause, the non-disclosure clause is severable from the assignment provision and would be valid even assuming California law applies. See id.

Alternatively, defendant contends that the assignment provision is overbroad under Massachusetts law but again he ignores plaintiffs' claims with respect to the non-disclosure provisions in the NNC Agreement.  Plaintiffs' argument supports the imposition of an injunction.

Third, defendant suggests in his opposition memorandum that the statute of limitations has run on plaintiffs' breach of contract claims.  That conclusory statement is, however, unexplained and thus unpersuasive.

Finally, defendant appears to assert that under patent law,
the patent applications were validly assigned to Venclose
because Esch was the inventor of the subject system.  His
supporting citations relate primarily to patent infringement
claims, however, while here plaintiffs' motion for a preliminary
injunction is based upon alleged breaches of contract (and a
petition for declaratory judgment based on two contracts).
Moreover, defendant's argument is compromised by his
contradictory statements in his written memorandum that state
contract law applies rather than patent law.

Accordingly, the Court concludes that plaintiffs have shown
a likelihood of success on the merits at least with respect to
the alleged breaches of contract involving the non-disclosure
provisions.

**b.   Irreparable harm**

Plaintiffs contend that defendant's disclosure of
confidential information as a result of defendant's conduct with
respect to the patent applications constitutes irreparable harm.
Defendant responds that plaintiffs have not shown any
irreparable harm because plaintiffs did not file suit soon after
the patent applications were publicly available.

Although an unreasonable delay can undermine a showing of
irreparable harm, improper disclosure of confidential
information "is, in itself, an irreparable harm." <u>Bos. Sci.</u>

Corp. v. Lee, Docket No. 13-13156, 2014 WL 1946687, at *16 (D. Mass. May 14, 2014). Because defendant released plaintiffs' confidential information with respect to a three-wire catheter system and a reuse limiter mechanism in the patent applications, the Court finds that defendant will suffer irreparable harm in the absence of an injunction. See id. (concluding that company suffered irreparable harm after defendant disclosed confidential information).

### c.   Balance of hardships

The Court concludes that the balance of hardships weighs in plaintiffs' favor. Because plaintiffs' confidential information was released, they stand to lose significant investment of resources from the development of their EV products. See Corporate Techs., Inc. v. Harnett, 943 F. Supp. 2d 233, 244-45 (D. Mass. 2013) (concluding that any harm from a narrow injunction would not outweigh the harm of disclosure of plaintiff's confidential information).

### d.   Public interest

Defendant claims that 1) it is not in the public interest to put him and his "small company" out of business and 2) that non-compete agreements are disfavored in California. Although plaintiffs do not submit a specific rebuttal, enforcing contractual provisions, including non-disclosure provisions which are at issue here, typically benefits the public interest.

Cf. id. at 245.   Therefore, the Court finds that the public
interest factor weights in plaintiffs' favor.

### C.   Other Defenses

Defendant asserts several reasons for denying plaintiffs'
motion for a preliminary injunction:  1) unclean hands, 2)
failing to join an indispensable party, 3) laches and 4) failure
to comply with Local Rule 7.1.

Defendant contends that plaintiffs have "unclean hands"
because 1) they "purposely delayed" in filing a law suit against
him and 2) they told him the NNC Agreement does not apply to
him.

Defendant's assertion of plaintiffs' unclean hands based
upon of his reliance on Covidien's allegedly fraudulent
statements is unreasonable as a matter of law because the
purported statements contradict the terms of the NNC Agreement.
See HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 571
(1st Cir. 2014) (reliance on alleged misrepresentations that
contradict the terms of a contract is unreasonable as a matter
of law).  Defendant also asserts an unclean hands defense based
upon a purported purposeful delay by plaintiffs to induce him to
develop a product but that claim is unsupported speculation.

With respect to the second argument, defendant merely
contends that plaintiffs improperly failed to join Venclose, a

purported "indispensable party," without explanation or citation.  The Court finds that conclusory claim underwhelming.

Defendant's laches argument also fails.  The application of laches is within the "sound discretion" of the Court.  <u>K-Mart Corp.</u> v. <u>Oriental Plaza, Inc.</u>, 875 F.2d 907, 911 (1st Cir. 1989) (quoting <u>Puerto Rican-American Ins. Co.</u> v. <u>Benjamin Shipping Co.</u>, 829 F.2d 281, 283 (1st Cir. 1987)).  At oral argument, defendant contended that plaintiffs unreasonably waited more than three years from the time Esch was terminated to bring this action.  Plaintiffs correctly noted, however, that this is not a non-compete case and thus the alleged delay here is between the date on which the patent applications became public and the filing of plaintiffs' motion for a preliminary injunction (about one year).  This Court finds that such a delay is not untoward because defendant did not receive approval from the FDA to market its product based on the subject patents until September, 2016, two months before plaintiffs filed suit.

Finally, defendant complains that plaintiffs failed to comply with Local Rule 7.1(a)(2), which provides that parties must confer and "attempt in good faith" to resolve or narrow any issues.  Defendant's contention is made on behalf of counsel for Venclose, however, who are not counsel of record in this action. Even if they were counsel of record, any purported breach of Local Rule 7.1 is not controlling in this case.  <u>Cf.</u> <u>Steele</u> v.

Turner Broad. Sys., Inc., 746 F. Supp. 231, 239 (D. Mass. 2010)
(declining to deny a motion for entry of default despite
plaintiff's failure to comply with Local Rule 7.1).

### D.   Security under Fed. R. Civ. P. 65(c)

> A movant for a preliminary injunction must give
> security in an amount that the court considers proper
> to pay the costs and damages sustained by any party
> found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c).  The provisions of Rule 65(c) are not
mandatory, however, and the Court has "substantial discretion"
to fashion the terms of the bond. Int'l Ass'n of Machinists &
Aerospace Workers v. E. Airlines, Inc., 925 F.2d 6, 9 (1st Cir.
1991).

Defendant suggest that if any injunction is imposed,
plaintiffs should be required to post a security bond of
$30,000,000 to forestall any purported harm to Venclose.
Venclose, however, is not a party to this action.  At oral
argument, plaintiffs responded, that although a minimum bond
would be warranted, they would not object to a requirement to
post a bond of $312,000 which is equivalent to Esch's annual
consulting salary.  The Court will accept the lesser amount as
appropriate in this case.

Plaintiffs also requested at oral argument that the Court
allow them to post a letter of credit in lieu of a bond.
Although other district courts may have allowed plaintiffs to

satisfy Fed. R. Civ. P. 65(c) with a letter of credit, in the absence of controlling authority to that effect this Court will decline to do so.

### ORDER

For the forgoing reasons, plaintiffs' motion for a preliminary injunction (Docket No. 14) is **ALLOWED** and such an injunction in the form attached hereto marked "A" shall be entered.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 11, 2017