United States District Court
District of Massachusetts

```
———————————————————————————    )
Covidien LP and Covidien Holding )
Inc.,                            )
                                 )
          Plaintiffs,            )
                                 )
          v.                     )        Civil Action No.
                                 )        16-12410-NMG
Brady Esch,                      )
                                 )
          Defendant.             )
———————————————————————————    )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This dispute arises out of alleged breaches of two
agreements between Covidien LP and Covidien Holding Inc.
("plaintiffs" or "Covidien"), on the one hand, and Brady Esch
("defendant" or "Esch"), Covidien's former employee, on the
other.  Plaintiffs allege defendant breached an employment
agreement and a separation agreement by 1) assigning rights to
three patents to his new company rather than to Covidien and 2)
disclosing plaintiffs' confidential information in the patent
applications.  Pending before the Court are the parties' cross-
motions for summary judgment and defendant's motion for leave to
file newly discovered information relevant to the pending
motions for summary judgment.

## I.  **Background**

Brady Esch began working for Covidien in 2009, when Covidien acquired his employer at the time, VNUS Technologies. In December, 2009, Esch entered into a "Non-Competition, Non-Solicitation, and Confidentiality Agreement" ("NNC Agreement") with Covidien, in which he agreed to assign his "Inventions" (defined broadly) to Covidien.  The NNC Agreement, which is governed by a Massachusetts choice-of-law provision states that

> [I]n order to avoid any dispute as to the date on which Inventions were made or conceived by you, they shall be deemed to have been made or conceived during your employment with the Company if you take affirmative steps to have them reduced to practice either during the term of your employment or within one year after separation from employment.

During his time at Covidien, Esch worked on Project Merge/Cattleya ("Project Cattleya"), which focused on a new radio frequency ("RF") ablation device.  As director of the project, he led the engineers during development and maintained "veto power" over key aspects.  While at Covidien, he expressed disfavor of a "premium" feature that provided a selectable or switchable heating element for the RF ablation device.

In 2013, Esch signed a "Separation of Employment Agreement and General Release" ("the Separation Agreement") following his termination.  Esch, with counsel, provided edits to the Separation Agreement which Covidien rejected.  Nevertheless, Esch signed the Separation Agreement, which reaffirmed the

Invention assignment provision of the NNC. Although parts of the Separation Agreement superseded provisions of the NNC, the Separation Agreement provides that

> any provisions of such Employee Agreement concerning disclosure or ownership of inventions, methods, processes or improvements shall continue in full force and effect and shall not be superseded by any provision of this Agreement.

Esch disputes the validity of this provision as he asserts that he assumed that California law would render terms relating to competition, solicitation and confidentiality unenforceable.

In February, 2014, Esch organized the incorporation of Venclose Inc. ("Venclose"), a direct competitor to Covidien. One month later, he filed provisional patent application No. 61/970,498 ("the '498 provisional patent") which describes designs, technology and improvements to venous RF ablation devices. That application was assigned to Venclose. Covidien alleges that the stated subject matter directly relates to Esch's work at Covidien. For example, the '498 provisional patent describes a selectable heating element similar to the dimensions disclosed in Project Cattleya.

In 2015, Venclose filed 1) utility patent application No. 14/670,338 ("the '338 patent") and 2) a foreign Patent Cooperation Treaty application ("the PCT application"). Darius Pryzgoda, Rory Chrstian and Cody Schlindler are also listed as inventors on the '338 patent. While Covidien alleges that those

follow-on patent applications claim priority to Esch's early provisional patent application ('498) and include additional advancements, the four named inventors assigned the rights to the applications to Venclose.

In January, 2017, this Court issued a preliminary injunction in favor of Covidien enjoining Esch and his agents, successors, representatives or assignees from making, developing, manufacturing or selling products that disclose or use any confidential information from Covidien. Esch, who was then CEO of Venclose, has since been discharged by that company.

## II. Cross-Motions for Summary Judgment

### A. Standard of Review

The role of summary judgment is to assess the proof in order to see whether there is a genuine need for trial. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a

reasonable jury could return a verdict for the nonmoving party".
Id.

If the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the nonmoving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322–23.

When parties file cross-motions for summary judgment on a particular count, the Court must assess each motion separately and determine whether there is any genuine issue of material fact and whether either movant is entitled to judgment. Phillip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n. 4 (1st Cir.1997).

**B. Defendant's Motion for Summary Judgment**

**1. Applicable Law**

Defendant argues that Counts I, II and III should be dismissed because the Massachusetts choice-of-law provision within the subject contracts is unenforceable pursuant to

fundamental California public policy. Plaintiffs rejoin that the California public policy of open competition and employee mobility has not been extended to assignments of Inventions following termination ("holdover provisions").

The Court will not honor a choice-of-law provision if 1) Massachusetts has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, 2) where application of Massachusetts law would be "contrary to a fundamental policy" of California, which has a "materially greater interest" than Massachusetts and 3) California law would apply in the absence of the Massachusetts choice-of-law provision. Oxford Glob. Res., LLC v. Hernandez, 106 N.E.3d 556, 564 (2018).

When the parties entered into the subject contracts, Covidien's principal place of business was Massachusetts. Thus, the "substantial relationship" prong is satisfied. Id. at 564.

With respect to the second prong of the analysis, California has a strong and well-settled public policy against non-competition and non-solicitation clauses. Cal. Bus. & Prof. Code § 16600. Neither the Oxford decision nor California courts have, however, set forth a clear public policy with respect to holdover provisions. In anticipation of that claim, defendant argues that the decision in Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co. demonstrates that

- 6 -

California has a fundamental policy of striking down holdover provisions. 630 F. Supp. 2d 1084, 1090-91 (N.D. Cal. 2009). There, however, the Northern District of California held that holdover provisions function as unlawful non-compete provisions but that they are enforceable to the extent they

> relate . . . to ideas and concepts which were based upon secrets or confidential information of the employer.

Id. Because the Court is not convinced that the California decisions with respect to non-compete and non-solicitation clauses extend to holdover provisions and because this case turns, in part, on the disclosure of confidential information, Esch has failed to demonstrate a "contrary fundamental policy".

Moreover, both California and Massachusetts share a policy of protecting employers from employees who disclose confidential information in violation of reasonable holdover provisions. Thus, the concerns of "disparity" in applicable law articulated in Oxford is significantly diminished here. Cf. id. at 567 n. 7. (where the application of Massachusetts law would lead to a contrary outcome with respect to the subject non-solicitation clause).

Thus, defendant's motion for summary judgment with respect to the application of California law as to Counts I, II and III will be denied.

- 7 -

## 2. Breach of Contract Claim

Defendant argues that Coviden has not established its breach of contract claim because 1) Esch did not "take" or "disclose" confidential information and 2) the information at issue was not "confidential". He further avers that the patent applications advance existing technology, cannot be reassigned as a matter of law and that his equitable defenses preclude recovery. Covidien rejoins that the information was confidential and that direct evidence of theft is not a prerequisite for its breach of contract claim.

### a. Misappropriation/Theft

Defendant's argument that plaintiffs have not demonstrated that Esch "took" or "stole" confidential information is unavailing because the Massachusetts Supreme Judicial Court has made clear that an

> employee [may be] enjoined if the information which he gained through his employment and retained in his memory is confidential in nature.

Jet Spray Cooler, Inc. v. Crampton, 282 N.E.2d 921, 924–25 (1972). Plaintiffs are not required to provide direct evidence of Esch's alleged breach of confidentiality claim. See id. Rather, Covidien may provide circumstantial evidence of the alleged information theft to survive summary judgment. See Contour Design, Inc. v. Chance Mold Steel Co., 693 F.3d 102, 109 (1st Cir. 2012) (holding that "trade secret misappropriation may

be demonstrated by circumstantial evidence, such as access to the trade secret . . . [and] similarity . . . [and] [i]t is reasonable to assume that a similar standard would apply under the confidentiality provisions of the NDA"). Thus, on that ground, defendant's motion for summary judgment will be denied.

### b. General Knowledge

Defendant next contends that he did not breach the confidentiality provisions of the NNC because he used his general knowledge, experience and skill, which an employer cannot constrain. Plaintiffs respond, and this Court agrees, that defendant has not demonstrated that the confidential information he allegedly used was not for his "own advantage . . . and to the harm of his employer". Abramson v. Blackman, 166 N.E.2d 729, 730 (1960). Because this Court must construe the facts in favor of the nonmoving party, defendant's motion for summary judgment on the basis that the alleged information used was merely based on general knowledge and skill will be denied.

### c. Publicly Known Information

Defendant further argues that device features that Covidien alleges he misappropriated (the reuse limiter mechanism, the stainless steel heating coils and the three-wire system) were not "confidential" because they were 1) known throughout the industry and publicly available and 2) the combination of those

features was obvious.  Finally, he claims that Covidien

abandoned those combined features when it closed down

ClosureFast, the ablation device that preceded Project Cattleya.

Covidien answers that none of those features with respect to a

RF venous ablation device were publicly known and that the

combination of those features would not be obvious to one

skilled in the art.

### i. Individual Features

While that which is disclosed in a patent cannot be a trade

secret, there is a material dispute of fact as to whether prior

patents adequately disclosed what Covidien describes as

confidential information.

For example, Esch claims that the reuse limiter mechanism

described in the '498 provisional patent was previously

described in U.S. Patent 6,237,604 ("the '604 patent") and that

it would have been obvious to one skilled in the art to apply an

arterial ablation method to a venous ablation device.  Covidien

retorts that 1) the reuse limiter for an RF ablation device had

not been done before in the industry, 2) the company's $4.4

million valuation of that feature demonstrates its uniqueness

and 3) Esch's own expert confirmed that no such product or

patent existed publicly before Esch disclosed the reuse limiter

feature in March, 2014.  Because there is a material dispute as

to whether the reuse limiter feature had been publicly available

in RF ablation devices, defendant's motion for summary judgment will be denied.

With respect to the stainless steel heating coils, Esch argues that those features are routinely used in other medical devices and that Covidien disclosed the use of stainless steel coils through the publication of a patent application, U.S. Patent 7,837,677 ("the '677 patent").  Covidien responds that the particularized dimensions of the stainless steel heating coil (width, thickness and gap spacing) had not been publicly disclosed and that no product, patent or publication disclosed those specifications.  Because there is a material dispute as to whether the specific dimensions of the stainless steel heating coil were publicly available prior to defendant's disclosure, his motion for summary judgment will be denied.

Finally, Esch avers that the three-wire system in the '498 provisional patent was aspirational and that an engineer of ordinary skill could not build the system using the '498 disclosures.  He further argues that Covidien did not originate or develop that "novel" system.  Covidien responds that, as a matter of law, Esch cannot claim ownership over the three-wire system because he concedes that he conceived the idea while employed at Covidien.  Although the Court declines to find, as Covidien suggests, that the holdover provision is enforceable as

applied to this feature, defendant's motion for summary judgment will be denied.

### ii. Combination of Features

The obvious combination of publicly known features are not protectable trade secrets. <u>Gillette Co.</u> v. <u>Provost</u>, No. 1584CV00149BLS2, 2017 WL 2292748, at *3 (Mass. Super. Apr. 19, 2017), <u>judgment entered,</u> (Mass. Super. 2017). Because the parties dispute whether the individual features were publicly available, the finding of whether the combination of those features was "obvious" is another material fact in dispute. Thus, defendant is not entitled to summary judgment with respect to plaintiffs' breach of contract claim.

### iii. Abandonment and Patent Reassignment

Defendant argues that Covidien abandoned the subject confidential information when it shelved its EasyClose product. Covidien responds that defendant's argument applies to trademark law, which is not at issue. <u>See</u> <u>Swartz</u> v. <u>Schering-Plough Corp.</u>, 53 F. Supp. 2d 95, 101-02 (D. Mass. 1999) ("Even if Swartz once held a trademark for SUN-BUG, it has been lost through abandonment".). This Court agrees that the doctrine of abandonment under trademark law does not apply here and thus summary judgment will be denied on that ground.

Defendant next contends that patent reassignment is an inequitable remedy because Covidien cannot abrogate the rights

of inventors other than Esch who contributed to the subject patents.  Covidien replies that it is not seeking to deprive others of their rights but merely to reassign Esch's rights in the subject patents through the holdover provision.  Because inventorship and ownership are separate issues and this case relates to Esch's interests in the subject patents (not those of other third-party inventors), defendant's motion for summary judgment on that basis will be denied. Beech Aircraft Corp. v. EDO Corp., 990 F.2d 1237, 1248 (Fed. Cir. 1993) ("Thus, inventorship is a question of who actually invented the subject matter claimed in a patent.  Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property".).

Finally, Esch briefly raises an argument about patent improvement but provides no caselaw in support of his contention.  Accordingly, the Court will deny defendant's motion for summary judgment on that basis.

### d. Equitable Defenses

Defendant argues that Covidien knew that Esch formed Venclose and knew of its upcoming RF venous ablation system in 2014, but took no action.  Thus, Esch contends that Covidien intentionally delayed suit causing extreme prejudice to him. Because Covidien's suit falls within Massachusetts' six-year statute of limitations for a breach of contract claim, Esch's

claim of laches fails. <u>Norton</u> v. <u>Chioda</u>, 58 N.E.2d 828, 831 (1945) ("Mere delay, provided it does not extend beyond the period of the statute of limitations, does not of itself amount to laches. Laches is not mere delay, but delay that works disadvantage to another".).

Defendant next asserts that Covidien is estopped from raising claims of misappropriation of confidential information because Covidien did not confront him or allege a breach until late 2016, almost three years after his termination. Covidien responds that it was not aware of Esch's patent application until December, 2015, and sued one year later. Defendant has failed to satisfy the elements of estoppel because he has not demonstrated how Covidien's alleged delay caused him to change his position detrimentally. <u>See</u> <u>Micro Networks Corp</u>. v. <u>HIG Hightec, Inc.</u>, 195 F. Supp. 2d 255, 266 (D. Mass. 2001) ("[E]quitable estoppel seeks to prevent a person from denying the natural consequences of his words or actions where that conduct induces another to change his position".). Thus, defendant's motion for summary judgment on this defense will be denied.

### 3. Breach of Implied Covenant

Esch argues that because Covidien's breach of contract claim fails, so also does its claim for breach of the implied covenant. Moreover, Esch contends that Covidien concedes that

it has not suffered any damages and thus this claim must fail as a matter of law. Covidien responds that questions as to whether the defendant's actions were blunders or deliberate actions taken in bad faith (as plaintiffs allege) are quintessential jury questions.

Because the Court will deny defendant's motion for summary judgment as to Covidien's breach of contract claim, Esch is not entitled to summary judgment on the implied covenant. Moreover, Covidien disputes Esch's claim that its expert found no actual damages. Covidien's expert testified that harm occurred but that she did not conduct a damages calculation. <u>Bruno Int'l Ltd.</u> v. <u>Vicor Corp.</u>, No. CV 14-10037-DPW, 2015 WL 5447652, at *5 (D. Mass. Sept. 16, 2015) ("In addition to alleging bad faith conduct, a plaintiff must adequately allege causation, that is, that the injury the plaintiff suffers can be tied to the defendant's interference".). Accordingly, defendant's motion for summary judgment on plaintiffs' claim of breach of the implied covenant will be denied.

## C. Plaintiff's Motion for Partial Summary Judgment

### 1. Applicable Law

The parties incorporate their arguments on applicable law in plaintiffs' motion for partial summary judgment. For the reasons set forth above, the Court finds that Massachusetts law applies to the subject contracts.

## 2. Assignment Provision

Covidien argues that 1) the First Circuit Court of Appeals ("First Circuit") has affirmed the use of holdover provisions, 2) the terms of the holdover provision in this case are clear and 3) the parties intended to enter into this agreement because they signed the same assignment provision twice. Covidien then avers that the holdover provision is reasonable in scope because it is limited to one year post-employment and only applies to "Inventions" related to Esch's work at Covidien.

Esch does not address the enforceability of holdover provisions under Massachusetts law but rather reiterates his arguments that Covidien has not demonstrated that Esch took or disclosed confidential information and has failed to prove damages.

As stated previously, the Court finds defendant's arguments with respect to breach of contract unavailing. The Court is further persuaded that Covidien's assignment provisions are reasonable in scope. See Preston v. Marathon Oil Co., 684 F.3d 1276, 1279, 1289 (Fed. Cir. 2012) (upholding a similar one-year holdover provision following termination.)

Under the assumption that its holdover provision is enforceable, Covidien now moves for this Court to find that all three patents have been assigned to Covidien. First, Covidien states that Esch filed the '498 provisional patent within four

months of termination and that the subject matter of the patent clearly relates to Covidien's venous ablation business. Covidien then contends that the utility and PCT applications relate back to the provisional application, which were filed outside the holdover provision, because all patents share a common inventor and certain specifications. For example, Covidien submits that the dependent claims of the utility and PCT applications disclose a selectable heating element, which was disclosed in Esch's provisional application for which he is the sole inventor.

Esch rejoins that even if the Court finds that he assigned his rights to the provisional patent application to Covidien, the Court cannot deprive other co-inventors of their contributions to the '338 and PCT patent applications and their rights to assign. Esch submits that those other co-inventors provided significant contributions.

As stated previously, assignment of patent rights differs from ownership and thus assignment of Esch's rights does not affect ownership rights of other named inventors to the subject patents. There is a material dispute, however, as to whether Esch disclosed or used Covidien's confidential information from Project Cattleya in the '498 provisional patent. Thus, viewing the facts in favor of the nonmoving party, the Court will deny

summary judgment in favor of the plaintiffs with respect to the subject patents.

### 3. Affirmative Defenses

#### a. Indispensable Parties

Covidien argues that failure to add an indispensable party is not an affirmative defense but a basis to dismiss a complaint under Fed. R. Civ. P. 19.  It submits that because this Court already found that Venclose is a dispensable party, this Court should dismiss that defense.  Esch responds that Covidien's claims against him rely on Venclose information and that Covidien is attempting to confirm that Venclose's patents belong to Covidien.  The Court finds that Covidien's motion for partial summary judgment is limited to the rights assigned by Esch as a party to the contractual agreements.  As such, the Court reaffirms its prior finding that, although Venclose might be affected by the outcome of this case, it does not follow that it is a "required" party. See Bacardi Int'l Ltd. v. Suarez & Co., Inc., 719 F.3d 1, 10 (1st Cir. 2013) ("[E]xisting parties can resolve their dispute and obtain complete relief as to each other without [the] absent party's presence [even if] a dispute with [the] absent party may be left unresolved." (citing MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 385 (2d Cir. 2006))).

### b. Massachusetts Deceptive Trade Practices Act

Covidien asserts that an affirmative defense under the Massachusetts Deceptive Trade Practices Act ("MDTPA" or "the Act") fails because 1) Esch has not asserted any counterclaims under the Act and 2) the Act does not cover employment disputes. Esch responds that the dispute does not arise out of the employment contract but instead from actions taken by Covidien in connection with the Separation Agreement.

Esch has not asserted a counterclaim of unfair and deceptive practices. Moreover, the Court doubts the validity of such a claim because it finds that the dispute is clearly governed by two contractual employment agreements. See Bolen v. Paragon Plastics, Inc., 754 F. Supp. 221, 227 (D. Mass. 1990) ("It is unequivocally established that disputes between employers and employees fall outside the scope of section 11".)

Accordingly, the Act provides no defense whether Esch counterclaimed or not and plaintiffs' motion for summary judgment as to this affirmative defense will be allowed.

### c. California Business and Professionals Code § 16600 and § 17200

Here, the parties incorporate their arguments with respect to applicable law. Because the Court finds that Massachusetts law applies, plaintiffs' motion for summary judgment on this affirmative defense will be allowed.

### d. Recoupment

Covidien asserts that Esch is attempting to set-off any alleged damages based on his claims in a parallel California state action but has provided no legal basis for such a defense. It further states that the California action has been stayed pending the outcome of this case. Esch responds that his defense relates to "recoupment" which is an affirmative defense that he may raise so long as it arises out of the same transaction as the plaintiff's claim.

> Recoupment allows a defendant to
>
> defend against a claim by asserting—up to the amount of the claim—the defendant's own claim against the plaintiff growing out of the same transaction.

In re Sheedy, 801 F.3d 12, 21 (1st Cir. 2015). The defense is limited to defendant's claims arising out of the very contract that gives rise to plaintiff's claim. First Nat. Bank of Louisville v. Master Auto Serv. Corp., 693 F.2d 308, 310 n.1 (4th Cir. 1982) (citing 6 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 1401 (1971 & Supp.1982). A set-off, on the other hand, is a counterclaim arising from an independent claim the defendant has against the plaintiff. Id.

Here, Esch's parallel California suit does not arise out of the same "transaction" because Venclose, the plaintiff in the California suit, is not a party to this action. Thus, the Court finds as a matter of law that recoupment is not an available

defense.  Plaintiff's motion for partial summary judgment with respect to this affirmative defense will be allowed.

### III. **Defendant's motion for leave to file newly discovered information relevant to the pending motions for summary judgment**

Esch argues that the new Department of Justice ("DOJ") announcements that Covidien settled the government's claims of kickback and pricing schemes is new evidence that supports his claims of unclean hands, estoppel, waiver, violations of Massachusetts Deceptive Trade Practices Act, unjust enrichment and failure to mitigate damages.  In support of that claim, Esch argues that Covidien's alleged losses stemmed from its own anti-competitive price cuts, not Esch's alleged breach of contract.

This Court will deny defendant's motion to file supplemental briefing because none of the new information, even if accepted as true, is relevant to this litigation.  Not only does Covidien make no admission of liability in those settlements, the agreements involve marketing and sales practices that either predate this litigation or are unrelated to venous RF ablation products.  Accordingly, defendant's motion for leave to file newly discovered information will be denied.

## ORDER

For the foregoing reasons, defendant's motions for summary judgment (Docket No. 142) and for leave to file newly discovered information relevant to the pending motions for summary judgment (Docket No. 231) are **DENIED**.

Plaintiffs' cross-motion for partial summary judgment (Docket No. 149) is, with respect to 1) the application of Massachusetts law to the subject contracts and 2) the dismissal of defendant's subject affirmative defenses, **ALLOWED,** but is, with respect to plaintiffs' claim that all patents are assigned to Covidien, **DENIED**.

**So ordered.**

_/s/ Nathaniel M. Gorton____
Nathaniel M. Gorton
United States District Judge

Dated May 6, 2019