**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| Covidien LP and Covidien Holding Inc., | |
| Plaintiffs, | Civil Action No. 1:16-cv-12410-NMG |
| v. | |
| Brady Esch, | **Jury Trial Demanded** |
| Defendant. | |

**Memorandum in Support of Covidien's Motion to Amend the Judgment for Attorneys' Fees, Expenses, and Prejudgment Interest**

## Table of Contents

**Page**

Introduction ................................................................................................................ 1

Argument .................................................................................................................... 1

I.     The Court should award Covidien $2,661,774.35 in reasonable attorneys' fees............ 2

    A.      Step 1: the number of hours that Covidien incurred litigating this case over 3 years
was reasonable.................................................................................................. 4

        1.     Mr. Esch's repetitive and unsuccessful early motions............................................ 5

        2.     Covidien conducted significant discovery requiring significant motion practice.... 6

        3.     The Court denied Mr. Esch's extensive summary judgment and *Daubert* motions. 9

        4.     Pre-trial and trial ....................................................................................... 10

    B.      Step 2: the rates for Covidien's counsel were reasonable......................................... 12

II.    The Court should award Covidien $531,008.76 for expenses it incurred. ............... 15

    A.      Ediscovery expenses................................................................................... 16

    B.      Expert expenses ....................................................................................... 17

    C.      Other expenses......................................................................................... 19

III.   Prejudgment interest ............................................................................................ 19

Conclusion .............................................................................................................. 20

## Table of Authorities

**Page(s)**

**Cases**

*Blanchard v. Bergeron*,
489 U.S. 87 (1989) ................................................................................................. 2

*Brooks Automation, Inc. V. Blueshift Techs., Inc.*,
21 Mass. L. Rptr 53 (Mass. Super. Apr. 6, 2006) ...........................................14

*Covidien LP v. Esch*,
No. 18-mc-80063-SVK, 2018 U.S. Dist. LEXIS 81053 (N.D. Cal. May 14,
2018) ...............................................................................................................6, 7

*Creative Playthings Franchising Corp. v. Reiser*,
09-cv-11456-DLC, 2015 U.S. Dist. LEXIS 101063 (D. Mass. Aug. 3,
2015) ................................................................................................................... 2

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ............................................................................................. 9

*Davis v. Footbridge Eng'g Servs., LLC*,
2011 U.S. Dist. LEXIS 93645 (D. Mass. Aug. 22, 2011) ...............................14

*Day v. Gracy*,
18-cv-10396-FDS, 2019 U.S. Dist. LEXIS 133182 (D. Mass. Aug. 8, 2019) ................. 2

*Fontaine v. Ebtec Corp.*,
613 N.E.2d 881 (1993) ....................................................................................... 2

*Fronk v. Fowler*,
22 Mass. L. Rptr. 366 (Mass. Super. May 21, 2007) .....................................14

*Gay Officers League v. Puerto Rico*,
247 F.3d 288 (1st Cir. 2001)..............................................................................12

*In re Prudential Ins. Co. of Am. SGLI / VGLI Contract Litig.*,
No. 11-md-02208-MAP, 2014 U.S. Dist. LEXIS 170100 (D. Mass. Dec. 9,
2014) ................................................................................................................... 4

*Joyce v. Town of Dennis*,
720 F.3d 12 (1st Cir. 2013) ................................................................................ 4

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819 (D. Mass. 1987)..................................................................... 2

*Melo v. Lawrence Plaza Ltd. Pshp.*,
    15-cv-13472-FDS, 2017 U.S. Dist. LEXIS 16306 (D. Mass. Feb. 6, 2017) .......... 4, 12, 14

*NPS LLC v. Ambac Assurance Corp.*,
    190 F. Supp. 3d 212 (D. Mass. 2016) ........................................................................ 2

*Riverside v. Rivera*,
    477 U.S. 561 (1986) ..................................................................................................... 4

*Travers v. Flight Servs. & Sys.*,
    2014 U.S. Dist. LEXIS 112960 (D. Mass. Jul. 14, 2014) ............................................ 14

*Tuli v. Brigham & Women's Hospital Inc.*,
    07cv12338-NG, 2009 U.S. Dist. LEXIS 129768 (D. Mass. June 8, 2009) .............. 13, 14

*Venclose Inc. v. Covidien Holding, Inc.*,
    No. 16-cv-07372-EJD, 2017 U.S. Dist. LEXIS 123637 (N.D. Cal. Aug. 4,
    2017) ........................................................................................................................... 3

**Statutes**

28 U.S.C. § 1920 ............................................................................................................. 16, 19

Mass. Gen. Laws c. 231, § 6C ............................................................................................. 19

**Rules**

Fed. R. Civ. P. 54 ............................................................................................................... 1, 2

Fed. R. Evid. 702 .................................................................................................................. 9

## Introduction

Covidien prevailed on its "two central breach of contract claims" against Mr. Esch for misappropriation of Covidien's confidential information. Dkt. No. 339 at 14. And the jury awarded Covidien "substantial damages" for those claims. *Id.* Covidien obtained this powerful result through significant time and labor by its attorneys over a three-year period of intense litigation. The case was hard-fought by both sides. Indeed, Mr. Esch's defense strategy included sequential early motions, discovery motions in California and Massachusetts, and broad summary judgment and *Daubert* motions. All of this extensive litigation, of course, took place before a contentious jury trial.

This Court has already determined that Covidien is entitled to an award of attorneys' fees and expenses. "Covidien, as the prevailing party, is entitled to its costs under Fed. R. Civ. P. 54 and to its attorneys' fees and expenses under the terms of the Employment Agreement, Separation Agreement and Fed. R. Civ. P. 54." Dkt. No. 340 at ¶ 8. Covidien requests a total of $2,661,774.35 in fees and $531,008.76 in expenses for litigation this case. This award of attorneys' fees and expenses is reasonable and fair in light of the three-year history of this and related retaliatory matters brought by Mr. Esch and his company Venclose (approximately $4.8 million in fees and expenses litigating this dispute with Mr. Esch and related cases in other jurisdictions). Covidien respectfully submits the award of fees and expenses it seeks is a reasonable and conservative amount.

## Argument

Covidien moves to amend the judgment under Rule 59(e) to include the Court's award of fees and expenses and prejudgment interest. The Court should amend the judgment to include the amount of attorneys' fees, expenses, and pre-judgment interest set

1

forth below.

I.     **The Court should award Covidien $2,661,774.35 in reasonable attorneys' fees.**

The Court has awarded Covidien its attorneys' fees as the prevailing party "under the terms of the Employment Agreement, Separation Agreement and Fed. R. Civ. P. 54." Dkt. No. 340 at ¶ 8. Courts in the First Circuit follow the lodestar method for calculating reasonable attorneys' fees. *Day v. Gracy*, 18-cv-10396-FDS, 2019 U.S. Dist. LEXIS 133182, at *5 (D. Mass. Aug. 8, 2019). Using that method, "attorneys' fees are calculated by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate." *Creative Playthings Franchising Corp. v. Reiser*, 09-cv-11456-DLC, 2015 U.S. Dist. LEXIS 101063, at *7 (D. Mass. Aug. 3, 2015) (citing *Fontaine v. Ebtec Corp.*, 613 N.E.2d 881, 890 (1993)). "Services rendered by paralegals and law clerks may be included in the lodestar." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 831 (D. Mass. 1987); *NPS LLC v. Ambac Assurance Corp.*, 190 F. Supp. 3d 212, 223 (D. Mass. 2016) (awarding "fees charged for paralegals, IT professionals, and other support staff."). There is "a strong presumption that the lodestar figure – the product of reasonable hours times a reasonable rate – represents a 'reasonable fee[.]'" *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989).

Covidien has taken a conservative approach to its lodestar figure. Covidien has incurred approximately $3.5 million in fees for Robins Kaplan's services on this case and related disputes involving Mr. Esch and his company Venclose. Arenz Decl., ¶ 4. Yet Covidien's request has narrowed this total in three material ways.

First, Covidien requests fees it has incurred from the services of only a limited core group of attorneys and paralegals from Robins Kaplan. Robins Kaplan has represented

Covidien during the entire course of this dispute. Arenz Decl., ¶¶ 3, 5-6. The total fees includes work from numerous attorneys, paralegals, law clerks, and other professional support staff from Robins Kaplan separate from the core team. Arenz Decl., ¶¶ 4, 19. Yet Covidien's request here is limited to a core team from Robins Kaplan of 6 attorneys: Munir Meghjee, Patrick Arenz, Emily Niles, and William Manske, and Anthony Froio and Robert Callahan Jr., who served as local counsel; and 4 paralegals: Anthony Hoppa, Jill Parrott, Kia Schmeckpeper, and Kodie Richardson. Arenz Decl., ¶¶ 6, 8-18. Thus, Covidien subtracted the fees incurred by Covidien for work performed by individuals outside of this core team.

Second, Covidien has subtracted fees that it incurred from Venclose's and Mr. Esch's coordinated efforts to file several lawsuits against Covidien as a basis for its motions to transfer or stay this case. *See* Dkt. No. 35 at 4 Dkt. No. 43 at 6. For instance, Covidien incurred substantial fees to defeat the first complaint Venclose filed against Covidien in the Northern District of California in December 2016. *Venclose Inc. v. Covidien Holding, Inc.*, No. 16-cv-07372-EJD, 2017 U.S. Dist. LEXIS 123637 (N.D. Cal. Aug. 4, 2017) (granting Covidien's motion to dismiss for lack of subject matter jurisdiction). Nor does Covidien's request include fees incurred from litigating the two California state court cases filed against it by Mr. Esch and Venclose, or Venclose's motion to dismiss Covidien's Delaware action, before all of those actions were stayed. *See* Dkt. Nos. 61, 64, 73-74. Thus, even though all these related matters arise from this action and Mr. Esch's contractual breaches, Covidien has subtracted any fees it incurred from these related matters in its request here. Arenz Decl., ¶¶ 7, 19.

Third, Covidien has individually reviewed each time entry requested in this case. As

3

part of that process, Covidien has excluded duplicative or unnecessary entries. Arenz Decl.,

¶ 21. For these three reasons, along with the additional support below, Covidien's request

here for a total lodestar award of $2,661,774.35 in fees it has incurred for 6,609.07 hours of

legal services by Robins Kaplan on this case is conservative and reasonable. Arenz Decl., ¶¶

5, 20.  Indeed, that lodestar amount already reflects a substantial discount from what

Covidien actually incurred to prevail in this case.

A.    **Step 1: the number of hours that Covidien incurred litigating this case over 3 years was reasonable.**

Covidien's requested fees are based on reasonable time billed by the core team. "In

fashioning the lodestar, the first step is to calculate the number of hours reasonably

expended by the attorneys for the prevailing party, excluding those hours that are 'excessive,

redundant, or otherwise unnecessary.'" *Melo v. Lawrence Plaza Ltd. Pshp.*, 15-cv-13472-FDS,

2017 U.S. Dist. LEXIS 16306, at *4 (D. Mass. Feb. 6, 2017) (citing *Hensley*, 461 U.S. at

434). The Court should consider the hard-fought nature of this case, including Mr. Esch's

vigorous defense and Covidien's necessary responses. A party "cannot litigate tenaciously

and then be heard to complain about the time necessarily spent by the [opposing party] in

response." *Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986); *see also In re Prudential Ins. Co. of

Am. SGLI/VGLI Contract Litig.*, No. 11-md-02208-MAP, 2014 U.S. Dist. LEXIS 170100, at

*23 (D. Mass. Dec. 9, 2014) ("the amount of time devoted to the Action was reasonable,

given Prudential's vigorous defense"); *Joyce v. Town of Dennis*, 720 F.3d 12, 32 (1st Cir. 2013)

(explaining that the plaintiff's need to respond to a vigorous defense should not be

overlooked in determining reasonable fees).

Here, Covidien filed this case against Mr. Esch in November 2016. *See* Dkt. No. 1.

Covidien pursued its claims—all related to a common nucleus of fact regarding Mr. Esch's

misappropriation of confidential information from Covidien's Project Cattleya—and necessarily responded to Mr. Esch's defense positions. Covidien prevailed on a preliminary injunction at the start of the case, and of course at trial as well.

This case had a lot at stake. Covidien had spent around $8.5 million on the development of venous ablation technology during Project Cattleya. Tr. 6-7:19-23, 6-70:1-10. And it had valued Project Cattleya at $41 million. Tr. 1-221:6-20, 6-70:25–6-71:14. In this case, Covidien's expert, Ms. Riley, valued the damages from Mr. Esch's breach of contract to be over $9 million. Tr. 6-90:20-22. The Court should view Covidien's fee request in light of the contentious nature of this dispute and the scope of issues involved. Here is an overview of the work Covidien's attorneys performed and challenges they faced through key phases of this case.

### 1.    Mr. Esch's repetitive and unsuccessful early motions

Covidien sought a preliminary injunction against Mr. Esch at the start of this litigation. Dkt. No. 15. Mr. Esch opposed Covidien's motion based on arguments on lack of personal jurisdiction, that Venclose was an indispensable party, and that the case should be transferred in California. Dkt. Nos. 31. The Court rejected all these arguments and granted a preliminary injunction against Mr. Esch. Dkt. No. 38. Even so, Mr. Esch continued to pursue those *same* arguments in serial motions. First, he filed a motion to dismiss or transfer the case. Dkt. No. 41. Next, he filed *another* motion to dismiss or stay the litigation based on various abstention doctrines. Dkt. No. 73. Covidien necessarily responded to Mr. Esch's motions. Dkt. Nos. 44, 55, 69, 80. And the extensive early briefing required significant time on Covidien's part. Arenz Decl., ¶ 23. The Court denied all of Mr. Esch's early motions, repeatedly rejecting Mr. Esch's same arguments and theories. Dkt. Nos. 60, 82. Mr. Esch's

motions unnecessarily multiplied the proceedings and delayed progression of the case into discovery until late 2017.

### 2. Covidien conducted significant discovery requiring significant motion practice.

Extensive discovery took place in this case. Mr. Esch disclosed over 115 witnesses in his initial disclosures. *See* Dkt. No. 240-2. Covidien took 15 depositions of Mr. Esch's witnesses (fact and expert) and defended 6 depositions of Covidien's witnesses (fact and expert). Arenz Decl., ¶ 26. Approximately 31,532 documents totaling 228,236 pages were produced in this case. Arenz Decl., ¶ 24. And the parties exchanged extensive written discovery. Arenz Decl., ¶ 25. Covidien served 25 interrogatories, 40 requests for production, and 25 requests for admission on Mr. Esch. Arenz Decl., ¶ 25. Mr. Esch served 25 interrogatories, 63 requests for production, and a set of 106 requests for admission on Covidien. Arenz Decl., ¶ 25.

From the start of discovery, Covidien faced strong opposition from Mr. Esch. At the first deposition of Venclose's CEO, H. Gerald Gibson and Mr. Esch's counsel—who also represented Venclose and Mr. Gibson—repeatedly made improper objections and instructed the witness not to answer 88 of Covidien's questions based on objections unrelated to the attorney-client privilege. Arenz Decl., ¶ 27, Ex. 2. Covidien filed a motion to compel Mr. Gibson to reappear for another individual deposition to answer Covidien's questions. Arenz Decl., Ex. 2. The court admonished Mr. Esch's counsel's discovery conduct, ruling "[f]urther inappropriate deposition conduct by this witness or counsel will be considered to be in bad faith and will result in sanctions by this Court." *Covidien LP v. Esch*, No. 18-mc-80063-SVK, 2018 U.S. Dist. LEXIS 81053, at *15 (N.D. Cal. May 14, 2018. Ultimately,

Covidien had to depose Mr. Gibson, Mr. Abrams, and Mr. Glenn each more than once due to positions taken by Mr. Esch and his counsel. Arenz Decl., ¶¶ 27-29.

Covidien's efforts to obtain discovery from non-party witnesses also required significant time, labor, and briefing. Arenz Decl., ¶ 30. The Northern District of California held several discovery motions on Covidien's requests for discovery, including the following motions:

- Covidien's Motion to Compel Venclose to Comply with Subpoenas to Produce Documents, Things, and Deposition Testimony

- Covidien's Motion to Compel H. Gerald Gibson to Reappear for his Deposition and Covidien's Motion for Fees and Costs relating to that motion

- Mr. Esch and Venclose's Motion to Quash Covidien's Subpoenas to Non-Party Darius A. Przygoda and/or Issue a Protective order Limiting the Scope of the Subpoenas

- Venclose's Ex Parte Motion to Stay the Deposition of Non-Party Venclose Contractor

*See*, 2018 U.S. Dist. LEXIS 81053, at *15. Mr. Esch's counsel represented Mr. Esch, Venclose, Mr. Przygoda, and other non-party witnesses in these motions, in responding to discovery, and at their depositions. Significant attention and time was required on Covidien's part to obtain discovery in the face of their opposition. Arenz Decl., ¶ 30.

Several discovery disputes were heard in the District of Massachusetts as well. Mr. Esch filed a motion to modify the scheduling order to extend discovery and delay the case. Dkt. Nos. 88-89. That motion was denied. Dkt. No. 167. Two days before Mr. Esch's deposition, he filed an "Emergency Motion for Protective Order and/or to Stay" his

deposition. Dkt. Nos. 97-98. The deposition went forward despite Mr. Esch's tactics and he ultimately withdrew the motion. Dkt. No. 103. But Covidien still had to incur the cost of filing an emergency opposition brief under the circumstances. Dkt. No. 101; Arenz Decl., ¶ 31.

Mr. Esch's non-retained expert disclosures led to significant motions practice as well. He disclosed several "non-retained expert" witnesses after the close of fact discovery. *See* Dkt. No. 130-2. Mr. Esch had never listed these potential witnesses on his initial disclosures. *See* Dkt. No. 130-6. Nor did Mr. Esch disclose the purported expert opinions he intended those individuals to present at trial. Dkt. No. 130-2. Consequently, Covidien moved to strike Mr. Esch's disclosures. Dkt. Nos. 130-131. This led to several rounds of briefing, hearings, supplemental "non-retained expert" disclosures from Mr. Esch, and additional depositions of the new witnesses in January 2019. Dkt. Nos. 131, 135, 137, 157, 176, 187. The Court limited Mr. Esch's presentation of these witnesses as experts—non-retained or otherwise. Tr. (5.10.2019 pretrial conference) at 9:21-10:10 ("McGlynn will not be permitted to testify as an expert, non-retained or otherwise"), 10:18-20 ("patent lawyers, are not allowed to testify as experts on the law in this Court").

These disputes epitomize the hard-fought nature of this case and Mr. Esch's vigorous opposition to Covidien's claims. Yet these disputes are just some of the issues that arose during discovery. Covidien's attorneys submitted hundreds of pages of briefing and attended multiple hearings on pretrial disputes. Arenz Decl., ¶ 31. Ultimately, Covidien obtained the evidence to prove Mr. Esch's misappropriation of Covidien's confidential information in violation of his contractual duties.

**3.    The Court denied Mr. Esch's extensive summary judgment and *Daubert* motions.**

Extensive briefing also took place after discovery ended. While both parties moved for summary judgment, the scope of their motions greatly differed. Covidien moved for partial summary judgment on three focused issues: 1) the application of Massachusetts law to the contracts, 2) Mr. Esch's assignment of patent applications, and 3) a handful of Mr. Esch's 18 affirmative defenses. Dkt. Nos. 67, 149. The Court granted Covidien's motion for summary judgment that Massachusetts law applied to the contracts and dismissed Mr. Esch's affirmative defenses. Dkt. No. 263 at 15-21; Tr. (5.10.2019 pretrial conference) at 6:24-7:2 ("The Court, in its ruling on summary judgment, has dismissed Mr. Esch's affirmative defenses of unclean hands, estoppel, waiver, and unfair and deceptive trade practices."). In comparison, Mr. Esch moved for "summary judgment on all Counts of the Complaint." Dkt. No. 142. He challenged every claim based on "lack of evidence to support each element," among several other grounds. *Id.; see also* Dkt. No. 153. Significant time and resources were required to address every issue raised by Mr. Esch on summary judgment. The Court denied Mr. Esch's motion for summary judgment in its entirety. Dkt. No. 263 at 5-15.

Just a month before trial Mr. Esch moved to introduce "newly discovered information" into the summary judgment record. Dkt. No. 231. Covidien opposed Mr. Esch's motion, arguing that the information he sought to introduce had no legitimate connection to any claim or defense in the case and was inadmissible under Federal Rules of Evidence 106, 402, 404, 802, and 805. Dkt. No. 233. The Court agreed, explaining it would "deny defendant's motion to file supplemental briefing because none of the new information, even if accepted as true, is relevant to this litigation." Dkt. No. 26 at 21.

Mr. Esch also moved for the wholesale exclusion of Covidien's well-qualified expert witnesses. Dkt. Nos. 158-164; Arenz Decl., Exs. 5, 7. His arguments were vast here as well—he argued that Covidien's experts "do not comport with the legal requirements of FRE 702 and the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and related authority." Dkt. Nos. 158, 161. After extensive briefing (Dkt. Nos. 188, 190), the Court denied both of Mr. Esch's *Daubert* motions at the pretrial conference. Tr. (5.10.2019 pretrial conference) at 3:20-4:6; Dkt. No. 290.

### 4.    Pre-trial and trial

A core group of Robins Kaplan attorneys represented Covidien at trial in May 2019, including Munir Meghjee, Patrick Arenz, Emily Niles, and William Manske.[1] Arenz Decl., ¶ 8. The team's preparation for trial involved numerous tasks, including the preparation of Covidien's exhibit list; drafting objections to Mr. Esch's exhibits (which included 789 exhibits); identifying deposition designations; responding and objecting to Mr. Esch's selected deposition testimony; witness selection and preparation; preparation of demonstratives; preparation of Covidien's opening statement; drafting proposed jury instructions; drafting proposed voir dire; and drafting a proposed verdict form, among other tasks. Arenz Decl., ¶ 32; *see, e.g.,* Dkt. Nos. 248, 259-260, 264-265, 274. Preparation for cross-examination was particularly challenging given Mr. Esch's disclosure of 44 individuals on his witness list, including 21 witnesses that Mr. Esch had never disclosed in his initial disclosures. Dkt. No. 248-2. Covidien continued to face these challenges as trial because of lack of transparency about the witnesses Mr. Esch would call and in what order. Tr.

---

[1] Anthony Froio and Robert Callahan Jr. served as local counsel throughout the case. Arenz Decl., ¶¶ 6-8. Covidien reduced the amount of fees it incurred by only having a core team of attorneys present at trial and local counsel did not attend.

(5.10.2019 pretrial conference) at Tr. 62:15-64:8; Tr. 4-235:13-4-237:1.

The trial team devoted significant time to pretrial briefing as well, including pretrial memoranda and motions in limine. *See* Dkt. Nos. 226, 236-246, 248-257. Covidien filed 9 motions in limine, the majority of which were granted in whole or in part. *See* Dkt. Nos. 287, 290; Tr. (5.10.2019 pretrial conference) at 4:10-12:7. Covidien also responded to Mr. Esch's 11 motions in limine (Dkt. No. 255). Several of Mr. Esch's motions raised issues not in dispute. *See, e.g.,* Tr. (5.10.2019 pretrial conference) at 13:15-24 (MIL 1), 14:21-15:10 (MIL 3), 18:20-23 (MIL 9). And the Court denied the vast majority of Mr. Esch's motions in limine. Tr. (5.10.2019 pretrial conference) at 12:10-20:6; Dkt. No. 287.

The jury trial in this case lasted 9 days. Covidien called 5 witnesses live and 3 by deposition. Dkt. No. 317. Covidien cross-examined the 6 witnesses that Mr. Esch called live and 3 by deposition. *Id.* Several motions and written submissions were prepared and filed during trial as well. Dkt. Nos. 289, 294, 300, 303, 305, 309, 311. After a day and a half of deliberations, the jury returned a verdict in Covidien's favor on its claims against Mr. Esch for use and disclosure of Covidien's confidential information in breach of his Employment and Separation agreements. Dkt. No. 314-316. Covidien "was awarded substantial damages by the jury," of $794,892.24. Dkt. No. 316. Thus, Covidien's attorneys spent a reasonable amount of time and labor to get the case through preliminary motions, discovery, summary judgment, and to prevail at trial.

***

Covidien requests an award of fees based on the reasonable hours billed by a core team of attorneys and paralegals. The number of hours requested is limited to the core team. Arenz Decl., ¶ 6, Ex. 1. And Covidien has already narrowed and subtracted any time billed by these timekeepers for duplicative or unnecessary entries. Arenz Decl., ¶ 21. For at least

11

that reason, the total time requested is conservative and reasonable in view of the extensive briefing, contentious discovery, and Covidien's successful result at trial. The following table details the hours of work by core team members from Robins Kaplan that Covidien requests for this case. Arenz Decl., ¶30-31, Ex. 1.

|  | 2016 Hours | 2017 Hours | 2018 Hours | 2019 Hours | Total Hours |
|---|---|---|---|---|---|
| *Attorneys* | | | | | |
| Patrick M. Arenz (RK) | 113.5 | 142.5 | 534.74 | 662.9 | 1453.64 |
| Robert F. Callahan, Jr (RK) | 22.4 | 16.3 | 11.2 | 0 | 49.9 |
| Anthony A. Froio (RK) | 14.6 | 5.8 | 1.4 | 0.4 | 33.2 |
| William E. Manske | 0 | 0 | 0 | 266.5 | 266.5 |
| Munir Meghjee (RK) | 48 | 70.7 | 279.59 | 753.2 | 1151.49 |
| Emily E. Niles (RK) | 184.5 | 181.5 | 1195.59 | 953.5 | 2515.09 |
| *Paralegals* | | | | | |
| Anthony L. Hoppa | 0 | 0 | 0 | 153.3 | 153.3 |
| Jill M. Parrott | 0 | 0 | 171.7 | 72.9 | 244.6 |
| Kodie L Richardson | 0.6 | 0 | 12.4 | 572.2 | 585.2 |
| Kia Y. Schmeckpeper | 0.6 | 0.4 | 165.85 | 0.7 | 167.55 |
|  | | | | | |
| Total Hours | 384.2 | 416.8 | 2372.47 | 3435.6 | **6609.07** |

**B.    Step 2: the rates for Covidien's counsel were reasonable.**

The rates charged to Covidien for Robins Kaplan's services were reasonable. Arenz Decl., ¶¶ 33-35; Froio Decl. ¶¶ 6-8. "The second step in calculating the lodestar requires a determination of a reasonable hourly rate—a determination that is benchmarked to the 'prevailing rates in the community' for lawyers of like 'qualifications, experience, and specialized competence.'" *Melo v. Lawrence Plaza Ltd. Pshp.*, Civil Action No. 15-13472-FDS, 2017 U.S. Dist. LEXIS 16306, at *4 (D. Mass. Feb. 6, 2017) (citing *Gay Officers League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001)). Other considerations include "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Id.* (quoting *Grendel's Den*, 749 F.2d at 951).

12

This case involved complex and technical breach of contract claims relating to Mr. Esch's misappropriation of confidential medical device technology in patents and his development of Venclose's product. Accordingly, Covidien hired a group of Robins Kaplan attorneys with significant intellectual property litigation and trial experience. Arenz Decl., ¶ 8. The following table provides billing rates for fees Covidien incurred in this case for work of the core team members. Arenz Decl., ¶ 33.

| | |
|---|---|
| *Attorneys* | |
| **Patrick M. Arenz (RK)** | |
| **Robert F. Callahan, Jr (RK)** | |
| **Anthony A. Froio (RK)** | |
| **William E. Manske** | |
| **Munir Meghjee (RK)** | |
| **Emily E. Niles (RK)** | |
| *Paralegals* | |
| **Anthony L. Hoppa** | |
| **Jill M. Parrott** | |
| **Kodie L Richardson** | |
| **Kia Y. Schmeckpeper** | |

—another reason that the rates are conservative and reasonable. These billable rates are comparable to those of similarly experienced attorneys and paralegals in the Boston, Massachusetts area. Froio Decl., ¶¶ 7-8. Indeed, courts have awarded fees at similar—and even higher—rates and found them reasonable in Massachusetts.

13

In *Tuli v. Brigham & Women's Hospital Inc.*, for example, the court awarded fees based on rates of $570-$615 for an attorney with 17 years' experience; $630-$695 for an attorney with 34 years' experience; $685-$735 for an attorney with 29 years' experience; $410-$495 for an attorney with four years' experience; $320-$385 for an attorney with two years' experience; $275 for a paralegal; and $110-$240 for other administrative staff. 07cv12338-NG, 2009 U.S. Dist. LEXIS 129768, at *5-7 (D. Mass. June 8, 2009). The court ruled that "the rates are reasonable" explaining that "[t]hese are the rates of large law firms, and they are consistent with the fee awards in other cases." *Id.* at *7. Thus, this court has awarded higher rates from over a decade ago than those requested here. Many other similar examples exist as well. *See, e.g., Travers v. Flight Servs. & Sys.*, 2014 U.S. Dist. LEXIS 112960 (D. Mass. Jul. 14, 2014) (awarding $600 hourly rate to attorney with 15 years' experience; $450 to attorney with eight years' experience); *Davis v. Footbridge Eng'g Servs., LLC*, 2011 U.S. Dist. LEXIS 93645, at *10, *14 (D. Mass. Aug. 22, 2011) (awarding $650 hourly rate for partner with over 10 years' experience; $565 hourly rate for partner with 14 years' experience; $355 hourly rate for associates with six years' experience; $140-$175 for paralegals); *Brooks Automation, Inc. V. Blueshift Techs., Inc.*, 21 Mass. L. Rptr 53 (Mass. Super. Apr. 6, 2006) (awarding hourly rates of $500, $600, and $625 per hour for partners with twelve, nineteen, and twenty-three years of experience, respectively, and awarding hourly rates of $410 for fifth-year associate, $300 for second-year associate, and $260 for first-year associate); *Fronk v. Fowler*, 22 Mass. L. Rptr. 366 (Mass. Super. May 21, 2007) (finding WilmerHale hourly rates of $450-575 for partners, $195-360 for associates, and $110-195 for paralegals over four years of litigation, while high, were reasonable in the context of the

14

litigation). Therefore, Covidien requests fees based on reasonable rates that Robins Kaplan billed for their services.

***

Covidien requests a total award of $2,661,774.35 in fees it incurred for 6609.07 hours of work performed by the core team at Robins Kaplan. The attached Declaration of Patrick M. Arenz includes detailed documentation of the billable rates, time billed, and time entries from Robins Kaplan for the fees requested by Covidien. Arenz Decl., Exs. 1, 3. The table below summarizes the lodestar calculation for Covidien's requested fees.

| | |
| --- | --- |
| | |
| *Attorneys* | |
| **Patrick M. Arenz** | |
| **Robert F. Callahan, Jr** | |
| **Anthony A. Froio** | |
| **William E. Manske** | |
| **Munir Meghjee** | |
| **Emily E. Niles** | |
| *Paralegals* | |
| **Anthony L. Hoppa** | |
| **Jill M. Parrott** | |
| **Kia Y. Schmeckpeper** | |
| **Kodie L Richardson** | |
| **Total** | |
| | |
| **Total Lodestar Amount** | **$2,661,774.35** |

## II.   The Court should award Covidien $531,008.76 for expenses it incurred.

Covidien has incurred over $1 million in expenses in litigating this dispute with Mr. Esch and the related cases in other jurisdictions with Mr. Esch and Venclose. Here,

Covidien requests in $531,008.76 in expenses it incurred, as set forth in more detail below. Arenz. Decl., ¶ 39.

Covidien has subtracted a significant amount of expenses incurred from this case from this request. This request also does not include significant trial expenses including: a war room, hotel rooms, and meal expenses for Covidien's attorneys, corporate representative, and the majority of its witnesses. Thus, Covidien's request for expenses is reasonable and conservative.

### A.     Ediscovery expenses

This case involved a significant volume of documents. Banks Decl., ¶¶ 4-5. Covidien produced 21,324 documents totaling approximately 156,762 pages. Banks Decl., ¶ 4. Mr. Esch, Venclose, and other non-parties—all represented by Mr. Esch's counsel—produced 10,208 documents with approximately 71,474 pages to Covidien. Banks Decl., ¶ 4. Mr. Esch's counsel ignored Covidien's requests to negotiate an ESI stipulation that could have more efficiently streamlined document exchanges. Arenz Decl., ¶ 42, Ex. 4.

Covidien necessarily incurred expenses for the processing, production, and management of the 31,532 electronic documents in this case. Banks Decl., ¶ 4; Arenz Decl., ¶ 41. The table below provides a summary of the Ediscovery costs Covidien incurred.[2]

| Category | Overview | Requested Expense |
|---|---|---|
| Processing | Processing involves imaging electronic documents, which include emails and electronic documents such as Microsoft Word documents, to extract the original document with its original properties and metadata intact. | $21,150.89 |

---

[2] To the extent the Court does not award Covidien the $1,008.36 in conversion costs and $472.62 in trial exhibit stamping costs requested in its Bill of Costs under 28 U.S.C. § 1920, Covidien seeks an award of those Ediscovery expenses here.

| Category | Overview | Requested Expense |
|----------|----------|-------------------|
| OCR | Documents undergo OCR'ing to provide searchable text that is used to locate relevant documents and search for the words and phrases in documents. | $1,314.15 |
| Data Hosting | Storing electronic documents and metadata is a secure database. | $64,863.00 |
| | **Total** | **$87,328.04** |

The Declaration of Linda Banks, Director of Ediscovery at Robins Kaplan LLP, provides a detailed explanation of the Ediscovery processes and the corresponding expenses incurred by Covidien for this case. Banks Decl., ¶¶ 3-11. These are standard processes used across the industry for litigation. Banks Decl., ¶ 11. The costs incurred by Covidien for Ediscovery were necessary and reasonable in this case given the volume of documents and scope of issues involved. Banks Decl., ¶ 11; Arenz Decl., ¶ 41. Therefore, Covidien requests that the Court award it $87,328.04 for Ediscovery expenses it incurred for this case.

### B.   Expert expenses

Covidien requests its expenses for the services of two expert witnesses for this case. Arenz Decl., ¶ 44. First, Dr. Terry Layton was a technical expert for Covidien. He opined on the venous ablation technology from Project Merge/Cattleya that Mr. Esch used and disclosed in patent applications and in the Venclose system. *See generally* Tr. 5-132:22-25, 5-145:18–5-151:15. Indeed, his testimony related to the key dispute in this case—whether Mr. Esch breached his contracts by using and disclosing Covidien's confidential information. *Id.* Dr. Layton also served as a rebuttal expert witness to Mr. Esch's technical expert, Dr. Swanson. Dkt. No. 160-3. The jury ultimately sided with Dr. Layton over Dr. Swanson when it found that Mr. Esch misappropriated Covidien's confidential information. Covidien incurred expenses from Dr. Layton's hourly work on this case from $425-$600 per hour and $50 per hour for travel. Arenz Decl., ¶ 45. A detailed breakdown of the expenses Covidien

incurred from Dr. Layton's services is included in the attached Declaration of Patrick M. Arenz along with the corresponding invoices. Arenz Decl., ¶ 45, Ex. 6. Covidien requests $164,395 in expenses Covidien incurred for the expert services of Dr. Layton in this case. Arenz Decl., ¶ 45.

Second, Michele Riley from Stout Risius Ross, LLC served as a damages expert for Covidien. Ms. Riley testified about the various damages relating to Mr. Esch's breach of contract. She offered opinions relating to several complex financial issues, including damages relating to the value of consideration Covidien was entitled to recoup from Mr. Esch's breach, projected royalties Mr. Esch would receive from Venclose, and the value of Mr. Esch's shares in Venclose. The jury adopted damages theories presented by Ms. Riley. *See* Dkt. No. 316, Tr. Ex. 710. Covidien incurred expenses from the hourly work of Ms. Riley and her colleagues at Stout (Arenz. Decl., Ex. 8) for work on this case at the following rates: Michele Riley, $525 per hour; Lindsey G. Fischer, $400 per hour; David P. Kiyosaki, $275 per hour; Lauren Ray, $215 per hour. A detailed breakdown of the expenses Covidien incurred from Stout's services is included in the attached Declaration of Patrick M. Arenz along with the corresponding invoices. Arenz Decl., ¶ 46, Ex. 9. Covidien requests $179,650 in expenses Covidien incurred for Stout's services in this case. Arenz Decl., ¶ 46.

Covidien's expert expenses are fair and reasonable given the issues and scope of evidence in this case. To start, both experts are highly qualified. And the experts reviewed large volumes of materials for their analysis in this case. Dkt. Nos. 160-3, 160-4 at "Materials Considered"; Dkt. No. 184-6 at "Documents Considered." They prepared extensive reports (*see* Dkt. Nos. 160-3, 160-4, 184-6) and were deposed by Mr. Esch's counsel. Esch's *Daubert* challenges against both experts were denied. Dkt. No. 290 (denying

Mr. Esch's *Daubert* motions at the pretrial conference). And both Dr. Layton and Ms. Riley testified at trial. Similarly, Mr. Esch retained two experts—Dr. David Swanson and William Scally—to testify on technical and damages issues. Thus, the Court should award Covidien $344,045 in expenses it incurred for the services of its expert witnesses.

### C.    Other expenses

Covidien requests $47,827.38 in expenses incurred for flights and hotels for its attorneys attend to depositions, hearings, and trial in this case. It also requests $35,368.99 in copying costs and $16,012.49 for deposition transcript and video costs incurred in this case which were not included in Covidien's Bill of Costs. A detailed breakdown of these expenses and the corresponding invoices are included with the Declaration of Patrick M. Arenz. Arenz Decl. ¶¶ 50-53, Exs. 11-15.

Covidien is also submitting its Bill of Costs to the Clerk for $76,620.66. To the extent Covidien is not awarded certain costs requests in its Bill of Costs as taxable under 28 U.S.C. § 1920, Covidien requests reimbursement of those costs as expenses here as well.

In total, the Court should award Covidien $607,629.42 for its requested costs and expenses Covidien incurred in this litigation.

## III.    Prejudgment interest

The Court ruled that "Esch is liable to Covidien for prejudgment interest under Mass. Gen. Laws c. 231, § 6C at a rate of twelve percent per annum from the date of breach through the date of judgment on the damages awarded to Covidien." Dkt. No. 240 at ¶ 7; Dkt. No. 239 at 13. Covidien's damages expert, Ms. Riley, calculated prejudgment interest beginning on March 26, 2014, the date Mr. Esch filed the '498 provisional patent application and breached his contracts by disclosing Covidien's confidential information,

through December 13, 2019, the date of judgment. Riley Decl. ¶¶ 3-4. Prejudgment interest amounts to $545,666. *Id.,* ¶ 5. Thus, Covidien requests that the Court amend the judgment against Mr. Esch to include $545,666 in prejudgment interest.

**Conclusion**

Covidien is entitled to its attorneys' fees and expenses incurred in litigating its claims against Mr. Esch. Dkt. No. 339 at 15; Dkt. No. 340 at ¶ 8. The attorneys' fees and expenses Covidien has incurred are reasonable given the hard-fought nature of this case and the complex and technical nature of the dispute. This case required significant labor on Covidien's part with a significant volume of briefing and discovery. Ultimately, Covidien succeeded in proving that Mr. Esch misappropriated Covidien's confidential information at trial. Thus, Covidien requests that the Court amend the judgment against Mr. Esch to include an award of $2,661,774.35 in fees, $531,008.76 in expenses, and $545,666 in prejudgment interest to Covidien.

Dated: January 10, 2020                    Respectfully submitted,

                                           */s/ Patrick M. Arenz*

                                           **ROBINS KAPLAN LLP**

                                           Munir R. Meghjee (admitted *pro hac vice*)
                                           Patrick M. Arenz (admitted *pro hac vice*)
                                           William E. Manske (admitted *pro hac vice*)
                                           Emily E. Niles (admitted *pro hac vice*)
                                           800 LaSalle Avenue, Suite 2800
                                           Minneapolis, Minnesota 55402
                                           Telephone: (612) 349-8500
                                           Facsimile: (612) 339-4181
                                           MMeghjee@robinskaplan.com
                                           PArenz@robinskaplan.com
                                           WManske@robinskaplan.com
                                           ENiles@robinskaplan.com

20

Anthony A. Froio (BBO No. 554708)
Robert F. Callahan, Jr. (BBO No. 685728)
800 Boylston Street, Suite 2500
Boston, Massachusetts 02199
Telephone: (617) 267-2300
Facsimile: (617) 267-8288
AFroio@robinskaplan.com
RCallahan@robinskaplan.com

*Attorneys for Plaintiffs*
*Covidien LP and Covidien Holding Inc.*

**Certificate of Service**

I certify that on January 10, 2020, I electronically filed this document with the Clerk of the Court using the CM/ECF system, and thereby served the registered participants as identified in the Notice of Electronic Filing.

/s/ Patrick M. Arenz