United States District Court
District of Massachusetts

| | |
|---|---|
| Covidien LP and Covidien Holding Inc.,<br><br>      Plaintiffs,<br><br> v.<br><br>Brady Esch,<br><br>      Defendant. | Civil Action No. 1:16-cv-12410-NMG<br><br>**Jury Trial Demanded** |

**Declaration of Patrick M. Arenz in Support of Covidien's Motion to Amend the Judgment for Attorneys' Fees, Expenses, and Prejudgment Interest**

I, Patrick M. Arenz, declare as follows:

1. I am a partner at Robins Kaplan LLP and represent Plaintiffs Covidien LP and Covidien Holding Inc. ("Covidien") in this case. I have been involved in this case from the outset, managed the case on a day-to-day basis, and was part of the trial team.

2. The Court awarded Covidien its attorneys' fees and expenses as the prevailing party in this case. Dkt. No. 339 at 15; Dkt. No. 340 at ¶ 8. I submit this affidavit in support of Covidien's Motion to Amend the Judgment for Attorneys' Fees, Expenses, and Prejudgment Interest.

3. Robins Kaplan has represented Covidien during the entire course of this three-year litigation.

4. Covidien has incurred a total of approximately $4.8 million in fees and expenses (approximately $3.5 million in fees from Robins Kaplan and over $1 million in expenses) litigating this dispute with Mr. Esch and related cases involving Mr. Esch and his

1

company Venclose. That total includes work from attorneys, paralegals, law clerks, and other professional support staff.

5. Covidien seeks a total lodestar amount of $2,661,774.35 in fees for 6,609.07 hours of legal services performed by the Robins Kaplan core team and $531,008.76 in expenses incurred by Covidien in this case.

6. Covidien's request is limited to fees incurred from work on this case performed by a core team from Robins Kaplan of 6 attorneys: Munir Meghjee, Patrick Arenz, Emily Niles, and William Manske, and Anthony Froio and Robert Callahan, who served as local counsel; and 4 paralegals: Anthony Hoppa, Jill Parrott, Kia Schmeckpeper, and Kodie Richardson. The backgrounds, experience, qualifications, and roles of these core team members are described in more detail below.

7. Covidien's request does not include any fees it incurred from litigating related matters against Mr. Esch and Venclose, including the following cases: *Venclose Inc. v. Covidien Holding, Inc.*, No. 16-cv-07372-EJD (N.D. Cal.) (dismissed for lack of subject matter jurisdiction); *Covidien Holding, Inc., et al v. Venclose, Inc.* No. Nl 7C-08-081 CEB (Del. Super. Ct.) (stayed); *Venclose Inc. and Brady Esch, v. Covidien LP et al.*, Nos. 17-CV-315406, 18-CV-327382 (Cal. Super. Ct.) (consolidated and stayed).

**I.     Core team members from Robins Kaplan**

8. A core group of Robins Kaplan attorneys represented Covidien at trial in May 2019, including Munir Meghjee, Patrick Arenz, Emily Niles, and William Manske. This team of attorneys have significant intellectual property litigation and trial experience. Kodie Richardson and Anthony Hoppa are Robins Kaplan paralegals that supported that team at trial. Anthony Froio and Robert Callahan Jr. served as local counsel throughout the case.

Kia Schmeckpeper and Jill Parrott supported the core team up to trial and throughout the litigation.

9.  I, **Patrick M. Arenz**, am a partner at Robins Kaplan LLP with more than 13 years of experience. I graduated *magna cum laude* from William Mitchell College of Law, in 2006. My practice has included patent and copyright infringement matters, trade secret misappropriation, breach of contract disputes, and business and individual tort cases. I have represented Covidien from the start of this case. I managed this case on a day-to-day basis, oversaw significant briefing and discovery efforts, and appeared on Covidien behalf at numerous hearings, depositions, and at trial.

10.  **Munir R. Meghjee** is a partner at Robins Kaplan LLP with more than 28 years of experience. Mr. Meghjee graduated *cum laude* from Northwestern University School of Law in 1991. His national practice has included representing corporations, pension funds, foundations, and academic institutions in patent, business, and financial litigation, as well as individuals in mass tort matters. Mr. Meghjee has represented Covidien during this entire case, and appeared on Covidien's behalf at numerous hearings, depositions, and at trial.

11.  **Emily E. Niles** is a sixth year associate at Robins Kaplan LLP. She graduated *magna cum laude* from the University of St. Thomas School of Law in 2014. Ms. Niles primarily litigates business disputes, including breach of contract, trade secret, patent infringement, and employment matters. She has represented clients in several federal trials. Ms. Niles has been the primary associate working on this case from outset and played a substantial role during every stage of this case, including early motions, discovery, dispositive briefing, and trial.

12.     **William E. Manske** is a partner at Robins Kaplan LLP with 8 years of experience. He graduated *magna cum laude* from the University of Minnesota Law School. He represents individuals and companies on intellectual property matters, including patent, trademark, trade secret, and copyright litigation, among other business disputes. Mr. Manske became involved in this case in 2019 during trial preparation. He played a significant role in trial preparation and assisting the team at trial.

13.     **Anthony A. Froio** is the Managing Partner of Robins Kaplan LLP's Boston office and a member of the firm's Executive Board. Mr. Froio graduated from Suffolk University Law School in 1989. He has over 30 years of experience in complex litigation related to intellectual property and trademark infringement, employment and bankruptcy litigation, as well as general commercial disputes. Mr. Froio is a member of the Massachusetts Academy of Trial Lawyers. He served as local counsel for Covidien in this case.

14.     **Robert F. Callahan Jr.** is a senior associate in the Boston office of Robins Kaplan LLP. Since graduating from Boston University School of Law in 2012, Mr. Callahan has appeared in a number of federal court trials, including intellectual property litigation in the U.S. District Court for the District of Massachusetts. Mr. Callahan's litigation practice focuses on intellectual property and complex commercial disputes. He served as local counsel for Covidien in this case.

15.     **Kodie Richardson** is a Senior Paralegal in the Robins Kaplan LLP Boston office. Kodie received her B.S. in Justice Studies from Arizona State University in 1998. She went on to receive her Paralegal Certificate, *with Distinction*, from the Academy of Business College in 2000. Ms. Richardson is a career litigation paralegal with 20 years' experience

handling a variety of cases with extensive trial experience. Ms. Richardson was responsible for all aspects of trial support for this case.

16.     **Anthony Hoppa** is the Director of Litigation Support & Trial Consultant at Robins Kaplan LLP. He has a BA from Hamline University in Legal Assistance and is a Certified Trial Director Trainer. He has nearly 30 years of legal support experience and has supported over 35 jury trials as a Senior Paralegal and Trial Consultant. Mr. Hoppa assisting the Robins Kaplan LLP team with digital and video evidence preparation and in-court exhibit/evidence presentation during trial.

17.     **Kia Schmeckpeper** is a Senior Paralegal in the Robins Kaplan LLP Minneapolis office. Ms. Schmeckpeper received her A.A.S. in Paralegal from Minnesota School of Business in 2002 and in Accounting from Eldorado College in 1997. Ms. Schmeckpeper has 18 years of experience handling a variety of cases from inception through trial, appeals, and have assisted on matters before the PTAB and ITC. She provided litigation support throughout the case, but primarily during discovery, providing assistance with deposition preparation, expert discovery, and court filings.

18.     **Jill Parrot** is a Junior Paralegal in the Robins Kaplan LLP Minneapolis office. She received her Paralegal Certificate from the Minnesota Paralegal Institute in 2011. Ms. Parrott joined the case team on this matter during the discovery phase where she focused her work on preparing deposition kits and assisting with court filings.

19.     Numerous other attorneys and professional support staff provided services on this case to conduct significant document review and production, legal research, among other services necessarily for this case. Covidien has subtracted fees billed for work by attorneys and other professional support staff outside of the core team on this case.

II.     **Reasonable hours Covidien requests for Robins Kaplan's work on this litigation**

20.     Covidien seeks fees it has incurred for a total of 6,609.07 hours of legal services by Robins Kaplan's core team. The time billed to Covidien for Robins Kaplan's core team's work on this case was reasonable and necessary for the representation of Covidien in this case.

21.     Attached as **Exhibit 1** is a detailed description of contemporaneous time entries for work performed by Robins Kaplan core team that is requested by Covidien. Each time entry provides the name of the pertinent timekeeper, date of the work performed, a description for the nature of the work performed, the hourly rate charged for the work, the amount billed to Covidien, and the requested lodestar amount. All time entries for the core team have been reviewed and any duplicative or unnecessary entries have been removed.

22.     A limited subset of billing entries from June 2018 are marked with an "*" in Exhibit 1, indicating [REDACTED]. The lodestar amount requested was calculated based on the discounted time and the billing rates set forth herein such that the requested amount is less than the actual amount billed to and incurred by Covidien for those entries.

23.     Covidien's attorneys and paralegals spent a reasonable amount of time and labor to get the case through preliminary motions, discovery, summary judgment, and to prevail at trial, as discussed further below.

    A.     **Early motions**

24.     The first year litigation this case involved the following early motions involving extensive briefing:

- Covidien's Motion for Preliminary Injunction (granted), Dkt. Nos. 14-15, 31, 38;
- Esch's Motion to Dismiss or Transfer (denied), Dkt. Nos. 41-44, 50, 52-60; and

- Esch's Motion to Dismiss or Stay (denied), Dkt. Nos. 73-75, 80, 82.

### B. Discovery

25. **Document Production** - Approximately 31,532 documents totaling 228,236 pages were produced in this case.

26. **Written Discovery** – The parties exchanged extensive written discovery. Mr. Esch served 25 interrogatories, 63 requests for production, and a set of 106 requests for admission on Covidien. Covidien served 25 interrogatories, 40 requests for production, and 25 requests for admission on Mr. Esch.

27. **Depositions** - Covidien took 15 depositions of Mr. Esch's witnesses and defended 6 depositions of Covidien's witnesses.

28. The first witness deposed in this case was Venclose's CEO, H. Gerald Gibson. At the first deposition, Mr. Gibson and Mr. Esch's counsel—who also represented Venclose and Mr. Gibson—repeatedly made improper objections and instructed the witness not to answer 88 of Covidien's questions based on objections unrelated to the attorney-client privilege. Covidien filed a motion to compel Mr. Gibson to reappear for another individual deposition to answer Covidien's questions. That motion is attached as **Exhibit 2.** Covidien deposed Mr. Gibson twice as an individual and again as a 30(b)(6) witness for Venclose, Inc.

29. Covidien deposed James Abrams twice as a 30(b)(6) witness for Venclose Inc., first on June 26, 2018 and again on July 25, 2017. Defendant Esch's and Venclose's counsel had designated Mr. Gibson to provide testimony on certain topics, but he was unable and/or unwilling to do so at his deposition. Consequently, Mr. Esch's and

Venclose's counsel later agreed to reproduce Mr. Abrams for a second deposition to testify on those 30(b)(6) topics.

30. Covidien deposed Benjamin Glenn twice as well. Mr. Esch had not disclosed Mr. Glenn as a potential fact witness on his initial disclosures, but later disclosed him as a non-retained expert. Magistrate Judge Dein ordered Mr. Glenn to appear for a deposition to disclose his purported expert opinions. Dkt. No. 187 at 4. Mr. Glenn could not explain what opinions he would be providing in this case. *See* Dkt. No. 256 at 3 ("When asked/told at his deposition, 'And you can't tell me what those opinions are as you sit here today because you don't know as you sit here today what questions you'll be asked at trial; correct?' Mr. Glenn answered: 'That's the way that I'm understanding.'"). Later at the final pretrial conference, the Court ordered that Defendant Esch had to produce Mr. Glenn for a second deposition on the eve of trial.

31. **Disputes relating to discovery from non-party witnesses** - Mr. Esch and his counsel's efforts to prevent Covidien from obtaining discovery from non-party witnesses required significant attention and time from Covidien's attorneys to obtain discovery in the face of their opposition. This led to several discovery disputes heard in the Northern District of California, including the following:

- Covidien's Motion to Compel Venclose to Comply with Subpoenas to Produce Documents, Things, and Deposition Testimony;
- Covidien's Motion to Compel H. Gerald Gibson to Reappear for his Deposition and Covidien's Motion for Fees and Costs relating to that motion;
- Mr. Esch and Venclose's Motion to Quash Covidien's Subpoenas to Non-Party Darius A. Przygoda and/or Issue a Protective order Limiting the Scope of the Subpoenas; and
- Venclose's Ex Parte Motion to Stay the Deposition of Non-Party Venclose Contractor.

*See Covidien LP v. Esch*, No. 18-mc-80063-SVK, 2018 U.S. Dist. LEXIS 81053, at *15 (N.D. Cal. May 14, 2018.

32. **Discovery disputes in the District of Massachusetts** – Covidien also incurred fees from Robins Kaplan's work on discovery motions in the District of Massachusetts. Covidien's attorneys submitted hundreds of pages of briefing and attended multiple hearings on pretrial disputes including the following:

- Esch's Motion to Modify the Scheduling Order (denied), Dkt. Nos. 88-89, 93, 94, 117167;
- Esch's Emergency Motion for Protective Order and/or to Stay the Deposition of Brady Esch (withdrawn after fully briefed), Dkt. Nos. 97-98, 101;
- Esch's Motion to Compel, Dkt. Nos. 105-106, 112, 119, 122-124;
- Covidien's Motion to Strike Mr. Esch's Non-Retained Expert Witness Disclosures (granted in part, denied in part), Dkt. Nos. 130-131, 135, 137, 157, 176, 187, 198, 207; and
- Esch's Motion to Remove Confidentiality Designations and Unseal Documents (granted in part, denied in part), Dkt. Nos. 170-172, 194, 209, 215, 218-220, 229, 234, 247.

33. **Pre-trial and trial** - The core team's preparation for trial involved numerous tasks, including the preparation of Covidien's exhibit list; drafting objections to Mr. Esch's exhibits (which included 789 exhibits); identifying deposition designations; responding and objecting to Mr. Esch's selected deposition testimony; witness selection and preparation; preparation for cross-examination; preparation of demonstratives; preparation of Covidien's opening statement; drafting proposed jury instructions; drafting proposed voir dire; drafting a proposed verdict form; drafting pretrial memoranda; and drafting motions in limine, among other tasks.

**III.   Reasonable rates requested for Robins Kaplan' work on this litigation**

34. The following table details the hourly rates of Robins Kaplan's core team for work that Covidien incurred fees for on this case.

| Name | Position |
|---|---|
| Patrick M. Arenz | Partner |
| Robert F. Callahan, Jr. | Associate |
| Anthony A. Froio | Partner |
| William E. Manske | Principal |
| Munir R. Meghjee | Partner |
| Emily E. Niles | Associate |
| Anthony L. Hoppa | Paralegal |
| Jill M. Parrott | Paralegal |
| Kodie L. Richardson | Paralegal |
| Kia Y. Schmeckpeper | Paralegal |

35. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

36. Based on my knowledge, experience, and research, the hourly rates for the core team of Robins Kaplan attorneys and paralegals are both reasonable and comparable with the rates charged for the services of attorneys and paralegals of comparable skill, experience, and reputation in similar cases. The reasonableness of the hourly rates for Robins Kaplan's core team is also supported by the Declaration of Anthony A. Froio.

## IV. Total fees requested by Covidien

37. Covidien seeks a total lodestar amount of $2,661,774.35 in fees that it incurred for the work of Robins Kaplan's core team on this case.

38. The requested fees were calculated using the lodestar method of "multiplying the number of hours reasonably spent on the case times a reasonable hourly rate." *Creative Playthings Franchising Corp. v. Reiser*, 09-cv-11456-DLC, 2015 U.S. Dist. LEXIS 101063, at *7 (D. Mass. Aug. 3, 2015) (citing *Fontaine v. Ebtec Corp.*, 613 N.E.2d 881, 890 (1993)).

10

39. **Exhibit 3** includes detailed lodestar calculations for fees incurred by Covidien for services by Robins Kaplan's core team for work on this case by year and in total.

V. **Expenses incurred by Covidien in this litigation**

40. Covidien seeks a total of $531,008.76 in expenses that it incurred for this case.

   A. **EDiscovery expenses**

41. Covidien requests $87,328.04 in expenses it incurred for Ediscovery services in this case, including processing, production, conversion, and management of the 31,532 electronic documents. These Ediscovery were reasonable and necessary incurred in light of the extensive document discovery in this case.

42. The Ediscovery expenses incurred by Covidien and supporting documentation is detailed in the Declaration of Linda Banks, Director of Ediscovery at Robins Kaplan LLP.

43. Covidien sent a proposed ESI stipulation that could have more efficiently streamlined document exchanges in this case, but Esch's counsel ignored Covidien's requests to negotiate the terms for an ESI stipulation. A true and correct copy of Covidien's emails to Mr. Esch's counsel on this subject are attached as **Exhibit 4**.

   B. **Expert expenses**

44. Covidien incurred $344,045.00 in expenses for the expert services of Dr. Terry Layton and Michele Riley and her team at Stout Risius Ross, LLC for this case. The services of these experts were reasonable and necessary incurred in light of the technical and damages issues in this matter.

45. Dr. Terry Layton was a technical expert for Covidien in this case. His CV is attached as **Exhibit 5**. Dr. Layton's hourly rate for work on this case ranged from $425-$600

per hour and $50 per hour for travel. **Exhibit 6** is a detailed summary of the expenses Covidien incurred for Dr. Layton's services on this case and the corresponding invoices from Dr. Layton. The invoices have been highlighted to identify expenses Covidien's requests. Covidien seeks $164,395 in expenses it incurred for the expert services of Dr. Layton in this case.

46. Ms. Michele Riley, from Stout Risius Ross, LLC, was a damages expert for Covidien in this case. Several of Ms. Riley's colleagues from Stout Risius Ross assisted her in her work on this case. Ms. Riley and her colleague education and experience are described in the bios attached as **Exhibit 7**. Stout Risius Ross charged the following hourly rates for their work on this case: Michele Riley, $525 per hour; Lindsey G. Fischer, $400 per hour; David P. Kiyosaki, $275 per hour; and Lauren Ray, $215 per hour. **Exhibit 8** is a detailed summary of the expenses Covidien incurred for Stout Risius Ross's services on this case and the corresponding invoices from Dr. Layton. The invoices have been highlighted to identify expenses Covidien's requests. Covidien seeks $179,650 in expenses it incurred for Stout's services in this case.

    **C.**    **Deposition transcript and video expenses**

47. Covidien seeks $16,012.49 in deposition transcript expenses it incurred in this case. **Exhibit 9** is a detailed breakdown of deposition expenses Covidien requests, which does not include the deposition video and transcript expenses requested as taxable costs in Covidien's Bill of Costs.

    **D.**    **Copying and printing expenses**

48. Covidien seeks a total of $35,368.99 in copying and printing expenses it incurred in this case. **Exhibit 10** is a detailed breakdown of copying and printing expenses

Covidien requests and supporting documentation, which does not include the copying expenses requested as taxable costs in Covidien's Bill of Costs.

### E. Hearing transcripts

49. Covidien seeks a total of $426.70 in hearing transcript expenses it incurred in this case. **Exhibit 11** is a detailed breakdown of hearing expenses Covidien requests, which does not include the hearing transcript expenses requested as taxable costs in Covidien's Bill of Costs.

### F. Travel and hotel expenses for depositions, hearings, and trial

50. Covidien seeks a total of $47,827.38 in airline and hotel expenses Covidien incurred for its attorneys to attend depositions, hearings, and trial for this case. The travel and hotel expenses were reasonable and necessary incurred Robins Kaplan's representation of Covidien in this case.

51. **Exhibit 12** is a detailed breakdown of the $32,533.26 in airline and hotel expenses Covidien incurred for attendance of Robins Kaplan's attorneys at depositions for this case and the corresponding invoices.

52. **Exhibit 13** is a detailed breakdown of the $12,537.19 airline and hotel expenses Covidien incurred for attendance of Robins Kaplan's attorneys at hearings, mediation, and an in-person pretrial meet and confer for this case and the corresponding invoices.

53. **Exhibit 14** is a detailed breakdown of the $3,119.30 in airline expenses Covidien incurred transportation of Robins Kaplan's trial team to and from trial and the corresponding invoices.

I declare that the statements above are true and correct to the best of my knowledge.

Dated: January 10, 2020

                                              */s/ Patrick M. Arenz*

**Certificate of Service**

    I certify that on January 10, 2020, I electronically filed this document with the Clerk of the Court using the CM/ECF system, thereby served the registered participants as identified in the Notice of Electronic Filing.

                                                                      /s/ Patrick M. Arenz